UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

REGINALD WILLIAMS #94495                        CIVIL ACTION

versus                                          NO. 04-1889

DEPARTMENT OF CORRECTION                        SECTION: "I" (3)

## REPORT AND RECOMMENDATION

Petitioner, Reginald Williams, has filed a motion to reopen these federal *habeas corpus* proceedings.[1]  That motion was referred to the undersigned United States Magistrate Judge.[2]  For the following reasons, it is recommended that the motion to reopen be **GRANTED** and that the petition for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

Petitioner is a state prisoner incarcerated at the Allen Correctional Center, Kinder, Louisiana. On April 24, 2001, he was convicted of second degree kidnapping in violation of La.Rev.Stat.Ann. § 14:44.1.[3]  On November 9, 2001, he was found to be a second offender and was sentenced as such to a term of twenty years imprisonment, with the first two years to be served without benefit of

---

[1] Rec. Doc. 28.

[2] Rec. Doc. 29.

[3] State Rec., Vol. I of III , transcript of April 24, 2001, p. 49; State Rec., Vol. I of III, minute entry dated April 24, 2001.

parole or suspension of sentence.[4]  The Louisiana Fourth Circuit Court of Appeal affirmed his conviction and enhanced sentence,[5] and the Louisiana Supreme Court denied his related writ application without assigning reasons.[6]

On June 24, 2004, petitioner filed this application for federal *habeas corpus* relief.[7]  The undersigned subsequently issued a report recommending that the application be granted.[8]  The state then filed an objection to that Report and Recommendation noting, *inter alia*, that petitioner failed to fully exhaust his state court remedies.[9]

In light of the state's objection, this Court again reviewed the record and determined that petitioner's federal application was in fact a mixed petition which had to be dismissed without prejudice.  Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998).  Accordingly, the original Report and Recommendation was withdrawn and vacated, and petitioner was ordered to inform the Court in writing whether he opposed dismissal of his federal application without prejudice for failure to exhaust state court remedies.[10]  Petitioner subsequently notified the Court that he would prefer that these proceedings be stayed while he attempted to exhaust his unexhausted claim in state

---

[4] State Rec., Vol. I of III, minute entry dated November 9, 2001.

[5] State v. Williams, 842 So.2d 1143 (La. App. 4th Cir. 2003) (No. 2002-KA-0260); State Rec., Vol. I of III.

[6] State v. Williams, 864 So.2d 625 (La. 2004) (No. 2003-K-1991); State Rec., Vol. I of III.

[7] Rec. Doc. 3.

[8] Rec. Doc. 13.

[9] Rec. Doc. 16.

[10] Rec. Doc. 17.

court.[11]

In accordance with petitioner's stated desires, his motion to stay the proceedings was granted on July 17, 2006. He was ordered to return to the state courts within thirty days to pursue his unexhausted claim. It was further ordered that the Court would retain jurisdiction in this matter and that petitioner would be allowed to file a motion to reopen these proceedings within thirty days after exhausting his state court remedies with respect to that claim.[12]

In an attempt to comply with this Court's order, petitioner filed a writ application with the Louisiana Supreme Court. That application was denied on March 23, 2007.[13] On April 2, 2007, he then filed a motion to reopen these proceedings.[14] On May 9, 2007, that motion was denied because he still had not properly exhausted his state court remedies.[15] However, he was again given the opportunity to return to the state courts within thirty days to pursue his unexhausted claim. It was again ordered that the Court would retain jurisdiction in this matter and that petitioner would be

---

[11]  Rec. Doc. 19.

[12]  Rec. Doc. 22.

[13]  State *ex rel.* Williams v. State, 951 So.2d 1096 (La. 2007).

[14]  Rec. Doc. 23.

[15]  In denying the motion to reopen, this Court noted that Louisiana law requires that "[a]n application for post conviction relief shall be by written petition addressed *to the district court* for the parish in which petitioner was convicted." La.C.Cr.P. art. 926(A) (emphasis added). However, rather than returning to the state district court, petitioner had proceeded directly to the Louisiana Supreme Court to file a writ application asserting his unexhausted claim. In denying that writ application, the Louisiana Supreme Court expressly cited La.C.Cr.P. art. 926(A). This Court noted that when a petitioner bypasses the lower state courts and asserts a post-conviction claim in the first instance directly with the Louisiana Supreme Court, such a claim is not exhausted. See Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999).

allowed to file a motion to reopen these proceedings within thirty days after exhausting his state court remedies.[16]

On May 27, 2007, petitioner filed with the state district court a post-conviction application asserting his unexhausted claim.[17]   On November 10, 2008, that application was denied as untimely.[18]   He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ.  That writ application was denied by the Court of Appeal, which held that it found "no error" in the lower court's ruling.[19]   On October 16, 2009, the Louisiana Supreme Court then denied petitioner's related writ application, stating:  "Denied.  La.C.Cr.P. art. 930.8; State ex rel. Glover v. State, 93-2330 (La. 9/5/95), 660 So.2d 1189.  See also La.C.Cr.P. art. 930.4(A)."[20]

On October 20, 2009, petitioner filed the instant motion to reopen.[21]   The state has filed an opposition to the motion to reopen,[22] and petitioner has filed a response to that opposition.[23]

Because petitioner has complied with this Court's prior order regarding reopening, it is

---

[16]  Rec. Doc. 25.

[17]  <u>See</u> Rec. Doc. 28, p. 17.

[18]  <u>See</u> Rec. Doc. 28, p. 26 (Judgment dated November 10, 2008).

[19]  <u>See</u> Rec. Doc. 28, p. 27 (<u>State v. Williams</u>, No. 2008-K-1324 (La. App. 4th Cir. Dec. 4, 2008)).

[20]  <u>See</u> Rec. Doc. 28, p. 28 (<u>State</u> <u>ex rel.</u> <u>Williams v. State</u>, 19 So.3d 472 (La. 2009) (No. 2009-KH-0157)).

[21]  Rec. Doc. 28.

[22]  Rec. Doc. 33.

[23]  Rec. Doc. 39.

recommended that the motion to reopen be granted. However, for the following reasons, it is also recommended that his petition for federal *habeas corpus* relief be dismissed with prejudice.

## Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> The record reflects that on August 15, 2000, Lilly Riley was at her mother's house when she called her husband, the defendant, to come pick her up. Williams refused, telling her that he was not in a good mood. Later, Riley went outside and was surprised to see her husband in the front yard. Initially, Riley was reluctant to leave with Williams. Apparently the two had experienced problems in their marriage, and before leaving, Williams promised the victim's mother that he was not going to hurt her daughter, and that they were going to work it out.
>
> The two stopped briefly at the store before going home. Riley testified that her husband did not speak during the drive. Once inside the house, Williams told Riley "You know, I'm gonna knock your ass off, huh. You better not try to run." Riley chose otherwise, and ran down the steps and outside with Williams chasing behind her. Riley testified that Williams grabbed a shovel which was leaning against the wall of the house and blocked her path. He told her to get back in the house saying, "I knock your ass over with this shovel if you try to run. You gonna get back in that house." Riley stated that she went back inside so he wouldn't hit her.
>
> Once inside, Williams latched and chained the door. Riley grabbed at the door handle with both hands. Riley testified that Williams pried her hands free and threw her onto the floor and started beating her. Riley lay on her stomach with her face down, and Williams sat on her back and beat her on the side of her head. During the struggle, Riley broke the glass table in the living room with her foot. As Williams was beating her he said, "I'm going to kill you. I'm going to beat you for two days and then they gonna find you stinking after that."
>
> Riley was able to get up after Williams became tired. She went up the stairs. After she noticed that the phone had been removed from the socket, she jumped out the window. Riley stated that she jumped because she believed that he was going to "finish beating her, finish her off." Riley landed on a bush. The fall broke her foot in three places. Her arm and back were also injured. She also suffered a puncture wound on her leg.
>
> Riley testified that once outside, she called to some children to call the police. Williams came outside, pushed her down and taunted her saying "ok you're trying to run huh." Riley pleaded with him to get away from her. A man came from across the street and helped her. Williams drove off in his car. After the police arrived,

Riley was taken to Charity Hospital and treated.  Her foot was put in a cast and she was released the next day.

The victim testified that the defendant had threatened her with knives a lot of times.  She also related a previous incident involving her husband in which he had driven her to an isolated area of the city after the two had an argument.  Williams told her that he was taking her where people take women and kill them.  Riley testified that she ran from the car, but got back in the car after the defendant removed the tire iron from the trunk, because in his state of mind she was afraid he would hit her.[24]

## Plaintiff's Claims

Petitioner claims that there was insufficient evidence to support his conviction.  The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319).

In the instant case, petitioner was convicted of violating La.Rev.Stat.Ann. § 14:44.1, which provides:

> A.  Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
>
> (1) Used as a shield or hostage;
> (2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
> (3) Physically injured or sexually abused;
> (4) Imprisoned or kidnapped for seventy-two or more hours, except as

---

[24] State v. Williams, 842 So.2d 1143, 1144-45 (La. App. 4th Cir. 2003) (No. 2002-KA-0260); State Rec., Vol. I of III.

provided in R.S. 14:45(A)(4) or (5); or

       (5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.

       B.  For purposes of this Section, kidnapping is:

       (1) The forcible seizing and carrying of any person from one place to another; or

       (2) The enticing or persuading of any person to go from one place to another; or

       (3) The imprisoning or forcible secreting of any person.

Petitioner was charged by a bill of information in which it was alleged that he

committed second degree kidnapping by the forcible seizing and carrying of LILLIE WILLIAMS from one place to another, wherein LILLIE WILLIAMS was physically injured, imprisoned or kidnapped when REGINALD D. WILLIAMS was armed with a dangerous weapon or led LILLIE WIILIAMS to reasonably believe that he was armed with a dangerous weapon ...[25]

Accordingly, petitioner was specifically charged with violating La.Rev.Stat.Ann. § 14:44.1(A)(3)

and (5) in connection with (B)(1).

At the conclusion of the state's case, defense counsel moved for a directed verdict.  The

transcript reflects the following exchange:

BY MR. COSTA [defense counsel]:
       May I see the Record, please. Judge, I have a Motion at this time.  Judge, this is going to be a Motion for a Directed Verdict and I'll tell you why.
       When I came here this morning, you know, the statute, I know the Court is aware of it by now, the various elements of Second Degree Kidnapping.  Basically, it tells us that you've got to combine something in Section "A" with something in Section "B".  When I came here this morning I thought they were combining A3 with B3 or A3 and 5 with B3.  I can read it now.

---

[25]  State Rec., Vol. I of III, bill of information.

BY THE COURT:

     A3, you're talking about physically injured or sexually abused.

BY MR. COSTA:

     Yes.

BY THE COURT:

     Okay.

BY MR. COSTA:

     And A5 when kidnapped when the offender is being armed with a dangerous weapon. Combining that with B3, that's what I thought. But that's not what the Bill of Information says. We read the Bill of Information, they're combining A3 and 5 with B1. Now I call your attention to B1. It says, "the forcible seizing and carrying of any person from one place to another." And Judge, there's no evidence that took place, the forcible seizing and carrying of any place from one person to another. [sic] The legislative intent. Now I thought they were going to say the imprisoning of forcibly secreting of any person. I thought – meaning that he forced this woman, not that I agree with that either but he imprisoned her in the house. I thought the key word here was imprison her in her own house. But now that's not what the Bill of Information calls for. It calls for the forcible seizing and carrying of any person from one place to another. You can see what legislative intent was there. And they have not proved that element from this testimony. And that's what's in this Bill of Information to surprise, I'll tell you.

BY MR. SPANO:

     May I respond?

BY THE COURT:

     If he's finished. Are you finished, Mr. Costa?

BY MR. COSTA:

     Yes, Sir.

BY THE COURT:

     Okay.

BY MR. SPANO:

     Judge, I think the facts and testimony are very clear. I don't think he had to physically pick her up. I don't know what Mr. Costa means but she was physically forced from one location to another. Although it may have been a short distance, it was from one location to another. Forcibly, yes, by force with a shovel, a dangerous

weapon. One capable of inflicting great bodily harm.

BY THE COURT:

I'm going to deny the Motion. You can proceed, Mr. Costa.[26]

In his ruling, the trial judge made it clear that he was finding petitioner guilty based on the

charge as it was alleged in the bill of information. He stated:

BY THE COURT:

The Record should reflect that the Court has charged itself with the statute of Second Degree Kidnapping and the Court is aware that the Defendant is charged with Second Degree Kidnapping and that there are five verdicts responsive to this charge. In order to find the Defendant guilty as charged it's necessary that the Court find that the defendant forcibly seized or carried the victim from one place to another. And that he physically injured the victim or that the offender was armed with a dangerous weapon and that this occurred in the Parish of Orleans on or about the date specified in the Bill of Information. Regarding the Defendant being forcibly seized, the statute does not speak as to how far the victim has to be carried from one place to another or that there is any admonition about knowing the victim or of it being a husband and a wife. I also find that the Defendant did physically injure the victim and that he was in fact armed with a dangerous weapon. While I am concerned about the legislative intent and I am concerned about the history of this particular statute since 1989. Quite honestly, I don't feel like wives should be viewed as chattel in this matter and that there should be an exception for wives in this. And for the reasons stated I'm going to find the Defendant guilty as charged and ask for a sentencing date in a week.[27]

On direct appeal, the Louisiana Fourth Circuit Court of Appeal held that there was in fact

insufficient evidence to support petitioner's conviction as charged in the indictment, i.e. that the

victim was forcibly seized and carried from one place to another. The court nevertheless affirmed

his conviction, finding that there was sufficient evidence to convict him of second degree kidnapping

on a theory that he imprisoned or forcibly secreted the victim – an allegation not made in the bill

---

[26] State Rec., Vol. I of III, transcript of April 24, 2001, at pp. 46-48.

[27] State Rec., Vol. I of III, transcript of April 24, 2001, at p. 49.

information, a theory not argued by the prosecution at trial, and a finding not made by the trial judge.

The Court of Appeal held:

> In his first assignment of error, the defendant contends that the evidence was insufficient to support his conviction for second degree kidnapping as defined by La. R.S. 14:44.1. [FN1]  The standard of review as to the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt proof of each element of the crime.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); <u>State v. Captville</u>, 448 So.2d 676 (La. 1984).

> [FN1]  The statute provides:

>> A.  Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:

>>> (1) Used as a shield or hostage;
>>> (2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
>>> (3) Physically injured or sexually abused;
>>> (4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
>>> (5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.

>> B.  For purposes of this Section, kidnapping is:

>>> (1) The forcible seizing and carrying of any person from one place to another; or
>>> (2) The enticing or persuading of any person to go from one place to another; or
>>> (3) The imprisoning or forcible

secreting of any person.

> C. Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.
>
> The provisions of this statute apply when any occurrence mentioned in Subsection (B) combines with any occurrence enumerated in Subsection (A).

In the instant case, the bill of information alleged that the defendant, committed second degree kidnapping by the forcible seizing and carrying the victim from one place to another, while the defendant was armed or reasonably led the victim to believe that he was armed with a dangerous weapon. La. R.S. 14:44.1 A(5), B(1).

The defendant asserts that the evidence was insufficient to establish the forcible seizing and carrying from one place to another element of the crime. The Louisiana Supreme Court has held that the term "from one place to another" "requires evidence that the offender relocated the victim from one physical setting or environment to another." State v. Davillier, 99-1204, p. 1 (La. 12/10/99), 752 So.2d 149, 150. In Davillier, the "defendant dragged the victim by the hair from one side of her truck to the other and forced her to enter the cab, from where she ran and escaped." Id. The court found the facts insufficient to establish the crime as the defendant "had not yet moved her from the immediate physical environment in which his initial physical assault had taken place." Id.

Citing Davillier, in State v. Bowie, 2000-3344, p. 23 (La. 4/3/02), 813 So.2d 377, 393, the court likewise found that forcibly moving the victim from one room to another within the same structure was insufficient to establish that a forcible seizing and carrying "from one place to another" had occurred. See also State v. Arnold, 548 So.2d 920, 926 (La. 1989) (cited in Bowie) ("[a] robber's moving a victim at knife point from one room to another for the purpose of opening a safe arguably should not be punished as a kidnapping.").

In the present circumstance, the evidence established that the defendant prevented the victim from leaving the residence by wielding the shovel and demanding that she go back inside. It could be argued that the victim's immediate physical environment changed when she was forced to reenter the home. Nevertheless, the defendant's moving of the victim from outside the door to inside the door would not meet the "from one place to another" element of second degree kidnapping. Bowie, *supra*.

In the instant case, a review of the transcript reveals however that the evidence presented at trial would have been sufficient to support a conviction for

second degree kidnapping under a different subsection of La. R.S. 14:44.1, namely subsection A(3) or A(5) with subsection B(3). Read together with the common language of La. R.S. 14:44.1, these subsections provide:

> A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
> * * *
> (3) Physically injured or sexually abused;
> * * *
> (5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
>
> B. For purposes of this Section, kidnapping is:
> * * *
> (3) The imprisoning or forcible secreting of any person.

Further, the evidence showed the defendant forcibly detained the victim inside the residence. During the encounter when she tried to escape he threatened her with a shovel, forcing her to go back inside the residence. In addition, the victim testified he beat her while they were inside the residence. As such, the evidence was sufficient to support a conviction under either subsection A(3) or A(5) and subsection B(3).

The problem is the bill of information did not charge the defendant with committing the crime under subsection B(3); the bill alleged the commission of second degree kidnapping under subsection B(1). The question we must consider is whether the defendant's conviction can be upheld based upon subsection B(3) even though the subsection alleged in the bill of information was subsection B(1). In two cases courts have held that a defendant's conviction for first degree murder need not be reversed where the evidence was insufficient to support a conviction under one subsection of La. R.S. 14:30 but the evidence was sufficient to convict the defendant under another subsection of that statute. See State v. Wright, 2001-0322 (La. 12/4/02), 834 So.2d 974, State v. Ruffin, 572 So.2d 232 (La. App. 1 Cir. 1990). However, it is unclear from either of these cases whether the State alleged both subsections in the indictment, used the short form indictment which did not specify with which subsection the defendant was being charged, or as here alleged only one subsection for which the State did not present sufficient evidence.

A somewhat similar situation arose in State v. Schrader, 518 So.2d 1024 (La. 1988). The defendant was charged with "first degree" murder, but because the crime occurred under a former statute which did not differentiate between "first" and "second" degree murder, the State later amended the indictment to charge him only with "murder." [FN2] At the time of the offense, "murder" was committed either (1)

as a homicide with specific intent, or (2) as a homicide occurring during the perpetration of an enumerated felony.  The State's answers to the defendant's bill of particulars alleged that the defendant committed the murder while engaged in the perpetration of aggravated arson, but it also alleged it was proceeding under subsection (1), the specific intent subsection.  On the day of trial, the State apparently spotted the discrepancy and moved to amend its answers to reflect that it was proceeding under subsection (2) to "clarify" the record.  Defense counsel objected, stating he had been expecting the State to have to prove intent to kill.  The trial court allowed the amendment; the case proceeded to trial; and the defendant was convicted of manslaughter.  On appeal, he alleged the trial court erred by allowing the State to amend the bill of particulars on the day of trial.  The Court rejected this argument, stating:

> The defense was clearly entitled to know under which subsection of R.S. 14:30 the state was proceeding.  State v. Huizar, 414 So.2d 741 (La. 1982); State v. Rogers, 375 So.2d 1304 (La. 1979); State v. Johnson, 365 So.2d 1267 (La. 1978).  Nevertheless, as set forth in State v. Unzueta, 337 So.2d 1102, 1103-04 (La. 1976), "[w]hile the bill of particulars is intended to assure the defendant a full understanding of the charge in order that he might, in fairness, properly defend himself, it was never intended as a trap for the unwary district attorney.  It is for this reason that Article 485 of the Code of Criminal Procedure permits the district attorney to cure a defect in a bill of particulars."  The First Circuit relied on Unzueta in denying defendant relief on this point.  See, Schrader, 506 So.2d at 871.  Of course, Art. 485 addresses only those defects which might give rise to a motion to quash, not erroneous answers which may mislead counsel and impair preparation of the defense.  In this case, however, the state had clearly informed counsel of how it intended to prove its case.  The question of intent was a matter of inference arising from the circumstances of the case, if the state chose to make the argument at trial.  R.S. 15:445.  The apparent discrepancy in the state's answers should have alerted counsel that the prosecution had simply referred to the wrong subsection of the statute.  In any event, the defense efforts to subpoena its own arson expert for trial show clearly that counsel knew exactly where the issues would be joined at trial and that the state's answers as a whole fairly informed the defendant of the nature of the charge against him.

Schrader, at pp. 1029-1030.

[FN2]  The crime occurred in 1970, prior to the 1973 delineation

between "first" and "second" degree murder.

In the instant case, the bill of information listed the wrong subsection of the statute under which the defendant was being tried. The State's answer to the bill of particulars did not specify what subsection of the statute under which it was proceeding; it merely listed: "14:44.1." The answer also referred to an attached incident report, but that report is not in the record before this court, and it is unclear how much information was contained in the report. However, defense counsel was present at the suppression hearing held five months prior to trial where the victim's testimony included her abortive attempt to escape, the defendant's threats with the shovel, and his beating of her once he got her back inside the residence. It is also apparent that defense counsel had prepared his case based upon the assumption that the defendant had been charged under subsection B(3), not B(1) as alleged in the bill of information. At the conclusion of the testimony in the case, defense counsel moved for a directed verdict, stating:

> When I came here this morning I thought that they were combining A3 with B3 or A3 and 5 with B3.... But that's not what the Bill of Information says. We read the Bill of Information, they're combining A3 and 5 with B1.... Now I thought they were going to say the imprisoning [or] forcibly secreting of any person.... But now that's not what the Bill of Information calls for. It calls for the forcible seizing and carrying of any person from one place to another.... And they have not proved that element from this testimony. And that's what's in this Bill of Information to surprise [sic], I'll tell you.

Obviously, defense counsel was under no obligation at the time he finally looked at the bill of information (which apparently occurred sometime on the day of trial) to point out to the State that it had alleged a subsection for which it probably could not provide sufficient evidence. However, this is not a case where counsel had been misled as to what evidence the State was planning to present and was unprepared to meet the allegations in the bill of information. This case is not as clear-cut as that in Schrader, where the bill of particulars listed both the subsection describing the aggravating element actually presented at trial as well as the wrong subsection.

We find that the holdings of Wright, Ruffin, and Schrader are similar enough to encompass the situation in this case.

Accordingly, this assignment is without merit.[28]

---

[28] State v. Williams, 842 So.2d at 1145-49; State Rec., Vol. I of III.

To the extent that petitioner is claiming that there was insufficient evidence to support his original conviction under La.Rev.Stat.Ann. § 14:44.1(A)(3) and (5) in connection with (B)(1), that contention requires little discussion. He has already prevailed on that issue in the state appellate courts which found that, as a matter of Louisiana law, the evidence was clearly insufficient to support such a conviction under those provisions as the elements have been defined under state law.

To the extent that petitioner is contending that there was insufficient evidence to support his conviction as it was affirmed by the Louisiana Fourth Circuit Court of Appeal, i.e. as if he had been convicted under La.Rev.Stat.Ann. § 14:44.1(A)(3) and (5) in connection with (B)(3), his claim is in reality a due process claim raising the issue of whether it was constitutionally permissible for the intermediate appellate court to "affirm" his conviction for an offense for which he was not charged, prosecuted, or convicted in the trial court. In the original Report and Recommendation issued in this case, the undersigned found that petitioner's due process rights were in fact violated for the following reasons.

In Cole v. Arkansas, 333 U.S. 196 (1948), the petitioners were charged with and convicted of violating § 2 of Act 193 of the 1943 Arkansas Legislature. That section made it "unlawful for any person acting in concert with one or more persons, to assemble at or near any place where a 'labor dispute' exists and by force or violence prevent ... any person from engaging in any lawful vocation, or for any person acting ... in concert with one or more persons, to promote, encourage or aid any such unlawful assemblage." On appeal, the Arkansas Supreme Court affirmed the convictions as though the petitioners had been tried and convicted under § 1 of that same act, which made it "unlawful for any person by the use of force or violence, to prevent or attempt to prevent

any person from engaging in any lawful vocation within this state." The United States Supreme Court reversed the convictions, holding:

> [The Arkansas Supreme Court] has not affirmed these convictions on the basis of the trial petitioners were afforded. The convictions were for a violation of § 2. Petitioners urged in the State Supreme Court that the evidence was insufficient to support their conviction of a violation of § 2. They also raised serious objections to the validity of that section under the Fourteenth Amendment to the Federal Constitution. None of their contentions were passed upon by the State Supreme Court. It affirmed their conviction as though they had been tried and convicted of a violation of § 1 when in truth they had been tried and convicted only of a violation of a single offense charged in § 2, an offense which is distinctly and substantially different from the offense charged in § 1. To conform to due process of law, petitioners were entitled to have the validity of their convictions appraised on consideration of the case as it was tried and as the issues were determined in the trial court.
> We are constrained to hold that the petitioners have been denied safeguards guaranteed by due process of law – safeguards essential to liberty in a government dedicated to justice under law.

Cole, 333 U.S. at 201-02 (footnote omitted); see also McCormick v. United States, 500 U.S. 257, 270 n.8 (1991) ("Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury."); Dunn v. United States, 442 U.S. 100, 106 (1979) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury offends the most basic notions of due process."); Eaton v. City of Tulsa, 415 U.S. 697, 698-99 (1974) (per curiam) ("[T]he question is not upon what evidence the trial judge *could* find petitioner guilty but upon what evidence the trial judge *did* find petitioner guilty," and constitutional due process is denied when an appellate court sustains a trial court "by treating the conviction as a conviction upon a charge not made."); Cola v. Reardon, 787 F.2d 681 (1st Cir. 1986).

Based on Cole and its progeny, the United States First Circuit Court of Appeals noted: "An

appellate court may not go outside of the prosecution's trial theory to affirm a conviction because a criminal defendant must have notice of the charges against him and an opportunity to be heard in a trial on the issues raised by those charges."  Ortiz v. Dubois, 19 F.3d 708, 716 (1st Cir. 1994). That court explained:

> In general, the concerns expressed in Cole are implicated where an appellate court in effect "charges" a defendant with a new crime, and then concludes that the evidence was sufficient to support a conviction for that previously uncharged offense.  Thus, if the prosecution decides to submit a case to the jury on one of two equally valid legal theories, and the jury convicts despite insufficient evidence, on appeal the court cannot resurrect the conviction by ruling that there was sufficient evidence to convict on the alternative theory.

Id.

Based on the foregoing line of cases, the undersigned found that the ruling of the Louisiana Fourth Circuit Court of Appeal violated the United States Constitution, as interpreted by the United States Supreme Court.  This is true even if, as the state court opined, there was sufficient evidence to convict petitioner of another crime with which he, unfortunately, was not charged.  See Dunn, 442 U.S. at 107 ("[A]ppellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial.").[29]

---

[29]  This Court is aware that the instant case bears similarities to the one confronted by the United States Fifth Circuit Court of Appeals in Santellan v. Cockrell, 271 F.3d 190 (5th Cir. 2001).  In that case, the federal district court had granted *habeas* relief to a state prisoner find that a petitioner's due process rights were violated when the state appellate court affirmed his conviction for attempted kidnapping based on a different theory than relied upon by the prosecution at trial.  The Fifth Circuit reversed the judgment granting *habeas* relief.  However, Santellan is readily distinguishable from the instant case.  In its opinion, the Fifth Circuit noted:  "The indictment of Santellan alleged attempted kidnapping *only in general terms* and did not commit the State to prosecuting any one factual theory."  Id. at 197 (emphasis added).  Based on that and other facts, the Fifth Circuit held that there was no due process violation.

In the instant case, the bill of information alleged petitioner committed the crime in specific,

The undersigned also determined that the constitutional violation in this case could not be considered harmless, noting that the "affirmance" of an individual's conviction and imprisonment for a crime for which he which he was not charged, tried, or convicted offends one of the most basic notions of due process.  See id. at 106.  As previously noted, the undersigned cannot imagine how such an error could be considered a "trial error," as opposed to a "structural defect," so as to be amenable to a harmless error analysis.[30]

Nevertheless, the crucial issue this Court now faces is whether petitioner may be granted federal *habeas corpus* relief to correct this constitutional error.  As the undersigned noted in the

_____

rather than general, terms, i.e. charging a violation of La.Rev.Stat.Ann. § 14:44.1(A)(3) and (5) in connection with (B)(1).  Further, at the bench conference noted above, the prosecutor made clear that  the state was proceeding under that theory and no other.  Moreover, as noted, the judge expressly convicted petitioner based on that theory.  Therefore, Santellan is inapposite.  "Having formed the charge in a limited way, the government cannot now complain that the charge must be dismissed because the evidence demonstrates the wrong choice was made."  United States v. Hill, 835 F.2d 759, 764 (10th Cir. 1987).

[30]  The United States Fifth Circuit Court of Appeals has noted:

> In Arizona v. Fulminante, 499 U.S. 279, 307-08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Supreme Court recognized two categories of constitutional violations, "trial error" and "structural defects."  Trial error occurs "during the presentation of the case to the jury," and is amenable to harmless error analysis because it "may ... be quantitatively assessed in the context of other evidence presented in order to determine whether its admission as harmless ...."  Id.  On the other hand, structural defects "defy analysis by 'harmless error' standards" and require "automatic reversal of the conviction" because they affect "'the constitution of the trial mechanism'" and, therefore, "the entire trial process."  Brecht v. Abrahamson, 507 U.S. 619, 629, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting Fulminante, 499 U.S. at 308-10, 111 S.Ct. 1246).

Robertson v. Cain, 324 F.3d 297, 304 n.3 (5th Cir. 2003).

Report and Recommendation issued on June 22, 2006,[31] it was clear at the time that the stay was granted that petitioner faced a formidable obstacle to obtaining relief, i.e. the limitations period for state post-conviction filings set forth in La.C.Cr.P. art. 930.8(A). At that time, the Court noted that the state courts might well reject petitioner's claim as time-barred, and, if that occurred, the claim might then be procedurally barred in federal court. Nevertheless, the Court concluded that petitioner should be allowed to *attempt* to have his claim heard in the state courts and then, if he was unsuccessful, at least have the *opportunity* to argue against a procedural bar in this Court. Ultimately, the state courts did in fact reject the due process claim as time-barred, the state now expressly raises the procedural bar as a defense in this proceeding,[32] and petitioner, despite his best efforts has been unable for the following reasons to overcome the application of the bar.

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

In the last reasoned state court opinion addressing petitioner's claim, the Louisiana Supreme Court explicitly rejected the due process claim on state procedural grounds. As noted, that court

---

[31] Rec. Doc. 21.

[32] Rec. Doc. 33.

expressly cited in its denial La.C.Cr.P. art. 930.8, the state procedural article establishing the limitations period for seeking post-conviction relief. It is beyond cavil that article 930.8 is an independent and adequate state procedural ground to support a procedural bar in federal court. Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); see also Morris v. Cain, No. 06-30916, 2008 WL 3876479 (5th Cir. Aug. 20, 2008); Pineyro v. Cain, 73 Fed. App'x 10, 11 (5th Cir. 2003); Tolbert v. Cain, Civ. Action No. 08-435, 2009 WL 1309851, at *2 (M.D. La. May 11, 2009); Lott v. Travis, Civ. Action No. 08-1390, 2008 WL 4964797, at *7-8 (E.D. La. Nov. 18, 2008). When, as here, the state court relied on an independent and adequate state procedural rule, "federal *habeas* review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). Here, petitioner has made no attempt to establish cause for the failure to raise these claims. "Absent a showing of cause, it is not necessary for the court to consider whether there is

actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).[33]

On the other hand, petitioner does expressly argue that the procedural bar should be excused on the second basis, i.e. that application of the bar would result in a fundamental miscarriage of justice. However, controlling jurisprudence dictates that, in the context of a procedural bar in a federal *habeas corpus* proceeding, a "fundamental miscarriage of justice" occurs only where the petitioner can make "a persuasive showing that he is *actually innocent* of the charges against him. Essentially, the petitioner must show that, as a *factual matter*, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (emphasis added) (citations omitted). The United States Fifth Circuit Court of Appeals has explained:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted). No such showing can be made in this case. Although this Court is still of the opinion that the state

---

[33] Moreover, apparently the only argument which would normally be available to petitioner would be that his counsel was ineffective in failing to raise the claim in the state courts. However, even that argument would be insufficient here. Because petitioner has never argued in the state courts that his counsel was ineffective in that regard, and because he would now be barred from so arguing, see La.C.Crim.P. arts. 930.4(E) and 930.8, any such ineffective assistance of counsel claim would itself be procedurally defaulted. A procedurally defaulted ineffective assistance of counsel claim may not serve as "cause" for a procedurally barred claim unless petitioner shows "cause and prejudice" for the defaulted ineffective assistance of counsel claim. See Edwards v. Carpenter, 529 U.S. 446 (2000); Hatten v. Quarterman, 570 F.3d 595, 605 (5th Cir. 2009); Rachal v. Quarterman, 265 Fed. App'x 371, 375 (5th Cir. 2008), cert. denied, 2010 WL 250906 (U.S. Jan. 25, 2010); Lacour v. Cain, Civ. Action No. 05-2547, 2007 WL 1959006, at *6 (E.D. La. June 29, 2007). Petitioner has not attempted to make such a showing in this case.

courts erred in applying the law, the evidence adduced at trial was undeniably damning, convincing, and consistent with a finding of guilt as a factual matter. Even if petitioner's conviction is legally defective, he has not made a persuasive showing that he is actually innocent of the crime of which he stands convicted, i.e. violating La.Rev.Stat.Ann. § 14:44.1(A)(3) and (5) in connection with (B)(3). Therefore, the undersigned finds that, under current jurisprudence, petitioner's due process claim challenging that conviction is procedurally barred and cannot serve as a basis for granting federal *habeas corpus* relief.[34]

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's motion to reopen these proceedings, Rec. Doc. 28, be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that his petition for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415,

---

[34] That said, it is nevertheless troubling that petitioner is incarcerated based on a conviction which, at least in the view of the undersigned, violates due process. Therefore, if the recommendations herein are adopted, the undersigned would additionally urge the United States District Judge to grant a certificate of appealability in the event petitioner seeks review of this case by the United States Fifth Circuit Court of Appeals.

1430 (5th Cir. 1996) (en banc).[35]

New Orleans, Louisiana, this twelfth day of April, 2010.


_(signature)_

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[35] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.